# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CARMIA S. JACKSON-FARNSWORTH,<br>  f.k.a. CARMIA S. WILEY<br><br>            **Plaintiff,**<br><br>v.<br><br>CAROLYN W. COLVIN,[1]<br>**Acting Commissioner of Social Security,**<br><br>            **Defendant.** | **CIVIL ACTION**<br><br>No. 12-2516-JWL |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's evaluation of Plaintiff's mental impairments at step two of the sequential evaluation process, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

I.  **Background**

Plaintiff applied for SSD and SSI alleging disability beginning April 30, 2005. (R. 18, 171-73, 985-92). After proceedings before an administrative law judge (ALJ), Plaintiff requested review by the Appeals Council of an unfavorable decision issued on August 19, 2008. (R. 35-46, 108). The Council granted Plaintiff's request, vacated the hearing decision, and remanded for further proceedings to obtain additional evidence concerning Plaintiff's impairments, to give further consideration to the medical opinions, to evaluate Plaintiff's subjective complaints and explain the weight accorded to them, to assess Plaintiff's residual functional capacity (RFC) and provide rationale for that assessment based upon record evidence, and to obtain evidence from a vocational expert regarding work available for an individual with the RFC assessed. (R. 47-50).

In due course, Plaintiff exhausted proceedings before the Commissioner after the Appeals Council remand, and now seeks judicial review of the final decision denying benefits. She alleges the ALJ failed "to address the requirements contained in the [Appeals Council] remand order and committed further errors" (Pl. Br. 15), including in weighing the severity of Plaintiff's impairments at step two of the sequential evaluation process, in weighing the medical opinions of record, in evaluating the credibility of Plaintiff's allegations of symptoms resulting from her impairments, and in relying upon a

hypothetical question which was based upon an incomplete assessment of RFC when evaluating steps four and five of the sequential evaluation process.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary in this case because substantial record evidence does not support the ALJ's step two findings. Therefore, the court will not address the errors alleged by Plaintiff at later steps in the sequential evaluation process, and she may make her arguments regarding those issues to the Commissioner on remand. As a preliminary matter, however, the court addresses Plaintiff's suggestion that the ALJ's failure to fulfill the requirements of the Appeals Council remand order might be relevant to the courts judicial review of the Commissioner's final decision.

## II. The Court's Jurisdiction in Judicial Review of Agency Decisions

The Act provides that:

"Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . ., may obtain a review of such decision by a civil action commenced within sixty days . . .."

42 U.S.C. § 405(g). Thus, the jurisdiction conferred on the court to review decisions of the Commissioner is limited to "final decisions" made "after a hearing to which [the plaintiff] was a party." Califano v. Sanders, 430 U.S. 99, 108 (1977); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (citing Reed v. Heckler, 756 F.2d 779, 782 (10th Cir. 1985)).

In Sanders, the Supreme Court decided that, except for a limited class of colorable constitutional claims, 42 U.S.C. § 405(g) provides the only basis for the federal courts' jurisdiction in review of decisions of the Social Security Administration. 430 U.S. at

107-09. Therefore, it determined that the federal courts do not have jurisdiction over a decision of the agency denying a request to reopen an earlier application because the denial was not a final decision made after a hearing. Id. The Tenth Circuit, in Brandtner, relied upon 42 U.S.C. § 405(g) as the sole jurisdictional basis in social security cases and dismissed a case seeking judicial review of the Commissioner's dismissal of an untimely request for review, because there was no "final decision" for the court's review. 150 F.3d at 1307.

Here, there has been a final decision of the Commissioner of Social Security made after a hearing, and the court clearly has jurisdiction to review that decision. (R. 5) (Notice of Appeals Council Action) ("This means that the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in your case."). That final decision is the ALJ's decision dated April 26, 2011 which was identified as such by the Appeals Council. (R. 5) (Notice of Appeals Council Action) ("This is about your request for review of the Administrative Law Judge's decision dated April 26, 2011."). It is that decision which the court has jurisdiction to review, and the court will not act as a referee to ensure that the agency dotted all of its "i's" and crossed all of its "t's" in arriving at the decision. As noted above, the question before the court is whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard in arriving at his decision. If the ALJ failed to follow an instruction of the Appeals Council, his failure may have resulted in an error in the final decision, and that error may constitute a basis for the court to remand. But,

the ALJ's alleged failure to follow the instructions of the Appeals Council is itself an affront to be addressed by the Appeals Council, not by this court.  Moreover, as already addressed above, the Appeals Council found no reason to review the ALJ's decision, and denied Plaintiff's request for review, suggesting that the ALJ did not erroneously fail to follow its instructions.  (R. 5).  Therefore, the court does not consider whether the ALJ followed the instructions of the Appeal's Council in its remand order.

## III.    The Step Two Evaluation

Plaintiff claims the ALJ erred in his step two evaluation by classifying Plaintiff's "remote history of drug abuse" as a severe impairment and by determining that Plaintiff's depression and conversion disorder are not severe impairments.  (Pl. Br. 16).  Regarding drug abuse, Plaintiff argues that her history of alcohol abuse is twenty years in the past, and the ALJ's implying that she abused her pain medication and engaged in drug-seeking behavior "mischaracterizes the record" (Pl. Br. 18), and "is an unreasonable reading of the record."  (Pl. Br. 19).

Plaintiff argues that conversion disorder and depression have been diagnosed by medical professionals, that the ALJ who made the decision which the Appeals Council vacated and remanded, correctly determined that Plaintiff's depression is severe; and that the reports of Dr. Perry, a non-treating physician who examined Plaintiff for the Commissioner; of Dr. Stern, a non-examining state agency psychologist who reviewed the record before either ALJ hearing; and of Dr. Long, Plaintiff's treating physician, all demonstrate that Plaintiff's depression is severe within the meaning of the Act.  (Pl. Br.

7

16-17). Regarding conversion disorder, Plaintiff argues that the record contains evidence of conversion disorder and that the ALJ erroneously relied upon the testimony of the medical expert, Dr. Levine, to determine this was not a severe impairment despite Dr. Levine's specific testimony that his findings relate only to musculoskeletal impairments. Id. at 17-18.

The Commissioner argues the ALJ correctly found that Plaintiff has not shown her mental impairments result in any work-related limitations. She argues that the ALJ properly discounted the physicians' opinions regarding work-related limitations from Plaintiff's mental impairments. Finally, she argues that the ALJ properly evaluated Plaintiff's mental abilities pursuant to the Commissioner's psychiatric review technique and that Plaintiff offers no challenge to the ALJ's application of that technique.

### A. The ALJ's Findings

The ALJ found that Plaintiff has severe impairments including degenerative disc disease, fibromyalgia, and a history of drug abuse. (R. 20). He found that Plaintiff also has medically determinable impairments which are not severe within the meaning of the Act: osteoarthritis of the knees, mild depression and history of conversion disorder. Id. at 21. He applied the Commissioner's psychiatric review technique and found that Plaintiff has only mild limitations in the first three broad mental functional areas: activities of daily living; social functioning; and concentration, persistence, or pace; and no episodes of decompensation, the fourth broad mental functional area. (R. 21). Therefore, in accordance with the regulations, he determined that Plaintiff's medically

8

determinable mental impairments are not severe. (R. 22) (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)).

The ALJ summarized Plaintiff's mental health treatment for depression, and the treating source report of Dr. Long, the non-treating source report of Dr. Perry, and the non-examining source report of Dr. Stern. (R. 21-22). He accorded "minimal weight" to the medical opinions of Dr. Stern and Dr. Long (R. 22), and impliedly rejected the opinion of Dr. Perry. (R. 21) ("she does state that the information for the report was obtained from the claimant whose statements are not fully credible. Additionally, this was also a one-time evaluation and no treating relationship existed."). At step three of the sequential evaluation process, the ALJ noted that he had considered whether Plaintiff's condition meets or equals the severity of Listing 1.04 (Disorders of the Spine) (R. 22), but he made no mention whether he specifically considered Listing 12.07 (Somatoform Disorders).

Later, in his RFC assessment, the ALJ noted certain evidence regarding Plaintiff's alleged conversion reaction:

> On June 14, 2007, the claimant was admitted with weakness of the left face, left upper extremity and left lower extremity (Ex. 2F/29 [(R. 528)]). Again, Dr. Levine noted that was not an anatomic type finding with regard to the spine. Certainly, he said, it was possible to get that type of pattern with intercranial lesion although one would expect changes opposite to the face and extremities. But regardless, he noticed, there was a CT done of the head which was felt to be normal. A consult on June 14, 2007 by Dr.

9

> Applebaugh,[2] a neurologist, felt there was a possibility that there was a conversion reaction because of the non-dermatomal findings (2F/103[(R. 602)]). This again, said Dr. Levine, would not be an organic lesion in the musculoskeletal or spinal cord causing that type pattern of numbness or weakness.

(R. 24).

In his credibility analysis, the ALJ also discussed the evidence relating to Plaintiff's alleged history of drug abuse:

> The record also reveals a history of alcohol abuse and the claimant reported that she was hospitalized in a treatment program for dual diagnosis in her twenties (Ex 1F/146 [(R. 389)]). The record also reveals that the claimant has often sought narcotic pain medication through the ER. On August 10, 2006 Dr. Redmon, her primary care physician, declined to increase her medications for pain (Ex. 1F/44 [(R. 287)]). And on September 2, 2010 treatment notes from the KU Spine Center revealed that the claimant reported her medications were stolen. The note also revealed that her medications had been replaced three times in the last six months. She was advised that this was the last time it would be replaced. The claimant asked to return to Opana ER and IR[medication]. She reportedly dumped all other pain medications in the toilet that morning (Ex. 14F/3 [(R. 926)]). Such actions indicate drug-seeking activity which detract from her credibility.

(R. 25).

## B. The Standard for Evaluating the Severity of a Claimant's Impairments

At step two of the sequential evaluation process, the Commissioner must determine whether the claimant has a severe medically determinable impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To

---

[2]The physician whose signature block is on this record is Dr. Applebaum, and the opinion regarding conversion reaction appears on the second page of the consultation report. (R. 603) (Ex. 2F/104).

establish a severe impairment or combination of impairments, plaintiff must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). She need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. Williams, 844 F.2d 748, 751 (10th Cir. 1988). However, she must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

In evaluating the severity of mental impairments at steps two and three, the Commissioner has promulgated a psychiatric review technique which provides for rating the degree of functional limitation in each of four broad mental functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c) 416.920a(c). After rating the degree of limitation in each functional area, the Commissioner determines the severity of plaintiff's mental impairments. Id. §§ 404.1520a(d), 416.920a(d).

When the first three functional areas are rated as "none" or "mild," and the fourth area is rated as "none," the agency will conclude at step two of the sequential evaluation process that plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities." Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

At steps three, four, or five of the evaluation process, when determining whether a claimant's impairment or impairments are of disabling severity, the Commissioner must "consider the combined effect of all of [a claimant's] impairments without regard to

whether any such impairment, if considered separately would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923; see also, Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008); Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

In Brescia, 287 F. App'x at 628-629, the court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another impairment "severe" at step two does not constitute reversible error because the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. In Hill, 289 F. App'x. at 291-292, the court clarified that the failure to find additional impairments severe at step two is not cause for reversal only so long as at the later steps in the process the ALJ considered the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"

Moreover, while limitations attributed to impairments which are medically determinable but are not severe must be considered at later steps in the evaluation, alleged limitations attributable to impairments which are not medically determinable must not be considered at later steps. 20 C.F.R. §§ 416.908, 416.923; see also, Rutherford v. Barnhart, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be considered, an impairment must be medically determinable, but need not be "severe"); Gibbons v. Barnhart, 85 F. App'x 88, 91 (10th Cir. 2003) ("the ALJ must consider only limitations and restrictions attributable to medically determinable impairments.") (quotation omitted).

**C.    Analysis**

As a preliminary matter, the court sees no error in the ALJ's finding that Plaintiff's history of drug abuse is a severe impairment causing more than a minimal effect on her ability to perform basic work activities. As quoted above, the ALJ provided citations for each factual statement regarding Plaintiff's history of drug abuse (R. 25), and the court notes that each assertion is supported by the record evidence cited. From this evidence, it is clear the ALJ's findings are neither a mischaracterization nor an unreasonable reading of the record.

While it is true that Plaintiff has a long-term treatment relationship with the KU pain clinic, and that Plaintiff has a different explanation for at least some of the facts relied upon by the ALJ, that does not compel a finding of error with the ALJ's conclusion. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989) (same) (quoting Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). There is no error in the ALJ's finding that Plaintiff's history of drug abuse is a severe impairment.

Nevertheless, the court finds the ALJ erred in evaluating Plaintiff's conversion reaction, and remand is necessary for the ALJ to consider whether conversion reaction is a severe impairment in the circumstances of this case and, even if it is not severe, to

13

properly consider the impact of that impairment in his step three, four, and five evaluations.

As Plaintiff's briefs suggest, there is record evidence that she has conversion disorder and that she has physical symptoms resulting from that disorder. The record reveals that she was seen in the emergency room in June 2007 with stroke symptoms, but medical testing revealed no basis for many of the symptoms, and Dr. Applebaum suggested the possibility of a conversion reaction. (R. 528-29, 543-44, 602-03, 611-12). On August 17, 2007, Dr. Long's progress notes recorded the events from June, and noted that there was an indication of conversion disorder. (R. 664). On August 31 and September 14, 2007, the progress notes indicated conversion disorder (neurologic) as one of Plaintiff's medical problems. (R. 663, 666). The record contains progress notes dated June 25, 2007 wherein Plaintiff was referred for speech therapy after her emergency room incident. (R. 617-18). In those notes, Plaintiff reported that the events leading to the earlier emergency room incident were a "stress stroke, not a real stroke." (R. 617). The speech therapist noted that "[d]irect speech therapy to address fluency would likely be ineffective until psychiatric or stress issues are resolved. If fluency problems persist post counseling or other therapeutic intervention related to the cause of her conversion reaction, direct speech therapy treatment may then be indicated." (R. 618). Speech therapy was discontinued "at this time." Id. In a January 18, 2008 treatment note, Plaintiff reported to Dr. Long that "she had another 'stress stroke' after daughter caused her some trouble." (R. 674). In that note, Dr. Long recorded the impression of

"conversion 'strokes.'" Id. One year later, Dr. Long's February 17, 2009 treatment notes report a finding of conversion disorder with neurological symptoms, and states: "Says she had a 'stress-induced stroke' last night. Was seen in Providence ED & got Xanax and Effexor. Daughter and her boyfriend were fighting & she got in the middle of it. She became distraught & began stuttering, head hurt & entire left side of her body from her head to her feet began to hurt." (R. 748).

Despite this evidence, the decision says little regarding conversion disorder, and no analysis was made of the effects of that impairment. In his step two discussion, the ALJ found that "conversion disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere," but the ALJ did not explain the basis for that finding, cited or mentioned none of the evidence regarding conversion disorder, and said nothing about how the stroke-like symptoms resulting from the mental impairment would affect her basic physical work abilities. (R. 21). As noted above, the ALJ did not consider Listing 12.07 (Somatoform Disorders) in his step three analysis. (R. 22).

As quoted above, in his RFC assessment the ALJ provided one paragraph discussing Plaintiff's conversion disorder, in which he summarized the June 2007 emergency room visit and acknowledged Dr. Applebaum's suggestion that the symptoms were the result of a conversion reaction. (R. 24). However, he did not discuss or mention any of the other record evidence regarding conversion disorder, and he stated Dr. Levine's opinions that the symptoms were not "an anatomic type finding with regard to

15

the spine," and that this "would not be an organic lesion in the musculoskeletal or spinal cord causing this type pattern of numbness or weakness." (R. 24). In the very next paragraph the ALJ acknowledged that Dr. Levine addressed "only the musculoskeletal system (R. 24), but at no point in the decision did he recognize that conversion disorder is a mental impairment with physical symptoms.

The primary feature of a somatoform disorder, including conversion disorder, is the presence of <u>physical symptoms</u> that suggest a general medical condition but are not explained by that condition, by substance use or abuse, or by another mental disorder. Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 485 (4th ed. text revision 2000) (DSM-IV-TR). The Diagnostic and Statistical Manual of Mental Disorders (DSM) also notes that such persons "typically are inconsistent historians;" <u>id.</u> at 491; that the "more medically naive the person, the more implausible are the presenting symptoms." <u>Id.</u> at 493. It is noted that "[c]onversion symptoms are often inconsistent. A 'paralyzed' extremity will be moved inadvertently while dressing or when attention is directed elsewhere." <u>Id.</u> Because these individuals are often suggestible, their symptoms may be modified or resolved based on external cues." <u>Id.</u> at 495.

It must be remembered that "[t]he common feature of the Somatoform Disorders is the presence of <u>physical symptoms</u> that suggest a general medical condition . . . and are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder." DSM-IV-TR, at 485 (emphasis added). A primary difference between a Somatoform Disorder and Factitous Disorders or Malingering is that

16

in a Somatoform Disorder the physical symptoms are not intentional, or under voluntary control.  Id.  Thus, the fact that the objective medical evidence does not confirm the physical symptoms does more to suggest that there is a somatoform disorder than it does to suggest that Plaintiff is not credible or that she is feigning or malingering.  Parks v. Sullivan, 766 F. Supp 627, 636 (N. D. Ill. 1991).

In the decision here, the ALJ made much of Dr. Levine's opinion that Plaintiff's symptoms do not result from a known physical condition and that the medical testing did not support the symptoms alleged by Plaintiff.   Yet this is not remarkable in the circumstances present here.  Dr. Levine specifically noted that his testimony was "only addressing the musculoskeletal system" (R. 1031), and the ALJ acknowledged that fact. (R. 24).  Moreover, the physical symptoms in a conversion disorder admittedly are not confirmed by objective medical evidence and cannot be fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder. DSM-IV-TR, at 485.

It is mostly irrelevant in a case such as this that the objective medical evidence does not support Plaintiff's symptoms.  The real question is whether the symptoms, or the severity or intensity of the symptoms are intentional or under voluntary control.  If so, there may be the presence of a Factitious Disorder or Malingering and it would be appropriate to find that conversion disorder is not a medically determinable impairment or does not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities.  However, remand is necessary for the Commissioner to engage in that

17

analysis being mindful of the features of a conversion disorder.  The court is mindful that its duty is not to reweigh the evidence, and that it may not substitute its judgment for that of the Commissioner.  It has not provided the preceding discussion for the purpose of suggesting a different conclusion that the ALJ should have reached.  Rather, the court's discussion is to explain why the evidence does not support the ALJ's step two findings with regard to conversion disorder, and also does not support an argument that the ALJ considered limitations resulting from Plaintiff's conversion disorder at all later steps in the sequential evaluation process.

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for proceedings consistent herewith.

Dated this 27th day of March 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**